FIDELITY & CASUALTY COMPANY OF NEW YORK, PLAINTIFF, *v.* SECURED CASUALTY COMPANY, DEFENDANT.

Common Pleas Court, Summit County.

No. 209615. Decided August 7, 1961.

460

*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* by *Mr. Joseph S. Wise,* for plaintiff.

*Messrs. Olds, Maher & Olds,* by *Mr. James Olds,* for defendant.

COLOPY, J. This action concerns the scope of coverage provided by separate insurance policies containing conflicting clauses that apply to the accident. More specifically, the plaintiff, The Fidelity & Casualty Company (hereafter called Fidelity) seeks a judgment from Secured Casualty Company '(hereafter called Secured) for $10,093.05, with interest and costs. The aforesaid amount represents the sum of various items that appear in the following admitted facts:

A collision occurred upon the highway between a Chevrolet automobile owned and operated by Gilbert Russell Forrer (hereafter called Forrer) and another vehicle operated by John Cavender resulting in injuries to his wife, Iris Cavender, a passenger. Forrer, an employee of Babcock & Wilcox Company (hereafter called B & W) was driving his aforesaid Chevrolet in the course and scope of his employment. Under an agreement in effect, B & W paid Forrer mileage for use of his car in its behalf. Iris Cavender brought an action in this court against B & W for damages for her bodily injuries in the amount of $75,000. John Cavender filed a separate action against B & W for damages in the amount of $5,000.

In force at the time of the accident was a certain indemnity policy issued by Secured to Forrer on his said Chevrolet. It provided "limits of liability" for bodily injury to each person in the amount of $5,000, and $10,000 for each accident. This policy's provisions in part are:

## INSURING AGREEMENTS

I. *Coverage A—Bodily Injury Liability*: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

II. *Defense, Settlement, Supplementary Payments*: As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, the cost of bail bonds required of the insured in the event of accident or traffic law violation during the policy period, not to exceed the usual charges of surety companies nor $100 per bail bond, but without any obligation to apply for or furnish any such bonds;

(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

(d) pay expenses incurred by the insured for such immediate medical and surgical relief to others as shall be imperative at the time of the accident;

(e) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request.

The amounts incurred under this insuring agreement, ex-

cept settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

III. *Definition of Insured*: With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:

(a) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof;

(b) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident out of the maintenance or use of the automobile in the business of such employer.

## CONDITIONS

17. *Subrogation—Coverages A, B, D, E, F, G, H, I and J*: In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

18. *Other Insurance—Coverages A, B, D, E, F, G, H, I and J*: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance

available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise.

Also in force at the time of the accident was the policy that Fidelity had issued to B & W covering damages for bodily injuries to one person in the maximum amount of $200,000 and $500,00 for all persons injured in the one accident. Parts of this policy are:

## INSURING AGREEMENTS

I. *Coverage A—Bodily Injury Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.

II. *Defense, Settlement, Supplementary Payments.* As respects the insurance afforded by the other terms of this policy the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, the cost of bail bonds required of the insured in the event of accident or traffic law violation during the policy period, not to exceed the usual charges of surety companies nor $100 per bail bond, but without any obligation to apply for or furnish any such bonds;

(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

(d) pay expenses incurred by the insured for such immediate medical and surgical relief to others as shall be imperative at the time of the accident;

(e) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request.

464

The amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

III. *Definition of Insured.* The unqualified word "insured" includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply.

## CONDITIONS

3. *Automobiles Defined, Trailers, Two or More Automobiles.*

(a) Automobile. Except where stated to the contrary, the word "automobile" means a land motor vehicle or trailer as follows:

(1) Owned Automobile—an automobile owned by the named insured;

(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;

(3) Non-Owned Automobile—any other automobile.

The following described equipment shall not be deemed an automobile except while towed by or carried on a motor vehicle not so described: any crawler-type tractor, farm implement, ditch or trench digger, power crane or shovel, grader, scrapper, roller, well drilling machinery, asphalt spreader, concrete mixer, mixing and finishing equipment for highway work, other than a concrete mixer of the mix-in-transit type, and, if not subject to motor vehicle regulation any equipment used principally on premises owned by or rented to the named insured, farm tractor or trailer.

13. *Other Insurance.* If the insured has other insurance against a loss covered by this policy the company shall not be

liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise.

14. *Subrogation.* In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

Secured received both timely notices of the accident and timely requests to defend said actions. It refused to provide any defense. Fidelity did provide defenses to B & W. The *Iris Cavender case* was tried. She obtained a verdict against B & W in the amount of $25,000. Fidelity thereafter settled the Iris Cavender claim for $20,000. Fidelity also paid the costs of such case in the amount of $90.61; Fidelity also paid in connection with the trial $2,260.80 for attorney fees, $110 for services of a medical consultant, $69.40 for court reporter services, and $44.86 for a photographer's services. These payments were reasonable in amount and necessary in defending B & W at the trial. (Fidelity paid John Cavender $2,500 in settlement of his claim. This payment, however, is not included in the instant action inasmuch as it represents only medical and hospital expenses incurred in treating his wife and also loss of her services.)

Secured claims that under said Section 18 of its policy it "shall not be liable for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss." Secured denies that it is liable for any portion of the costs of defense or costs of court in this Iris Cavender trial.

The Court has reached these conclusions: The two policies

do not provide co-insurance as Secured contends. Instead, Secured gave the primary coverage and Fidelity gave excess coverage. The provision in Section 18 of Secured's policy with respect to excess insurance applies only to "temporary substitute automobiles or other automobiles." It has no application to the named insured's owned automobile specifically identified in the policy. None of the provisions in Secured's policy can be construed as to withhhold primary coverage with respect to liability arising from Forrer's use of his own aforesaid Chevrolet. On the other hand Section 13 of Fidelity's policy expressly provides that "the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured." Fidelity's policy expressly withholds insurance to the maximum amount that insurance is granted by Secured.

In line with the reasoning set forth in *Aetna Casualty & Surety Company* v. *Buckeye Union,* 157 Ohio St., 385, and *Citizens Mutual Automobile Insurance Company* v. *Liberty Mutual Insurance Company,* 273 Fed. 2nd, 189, Fidelity is entitled to a judgment against Secured in the aggregate amount of $7,575.67 with interest at 6 per cent from April 6, 1956 and the costs of the present action herein to be taxed. The specific expenditures that are included within the amount of this judgment are, (a) $5,000 (the limit of liability under Secured's policy for injury to one person) and (b) $2,485.06, the reasonable cost of defense, and (c) $90.61 the aforesaid court costs.

Secured claims that under no circumstances is Fidelity entitled to recover the aforesaid costs incurred in defending B & W against the Iris Cavender action since Fidelity was obligated to and would have defended regardless of anything that it may have done. It claims that Fidelity would have incurred the same defense cost under any circumstances. This is not necessarily true. We cannot speculate with respect to the cost Fidelity would have incurred had Secured performed its contractual duty. B & W had a contractual right to a defense by Secured, and that defense was furnished by Fidelity following said default. Fidelity was definitely subrogated to such rights by B & W on authority of the *Aetna case supra.*

Included within the amount that the Court held Aetna was entitled to recover from Buckeye Union Casualty Company was an item therein referred to in the opinion as "certain costs" amounting to $160.81. An examination of the records of that case shows that amount consisted of $156.00 for attorney fees and $4.81 court costs. It seems that the question has been definitely settled by this state's highest court.

Counsel for Fidelity shall furnish an appropriate journal entry.